**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **John Duka,** | ) | **CASE NO. 1:12 CV 1683** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Lake County Ohio, et al.,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

<u>**Introduction**</u>

This matter is before the Court upon defendant Nurse Carolyn Barbish's Motion for

Summary Judgment (Doc. 50), plaintiff's Motion for Partial Summary Judgment on Liability

against Lake County, Sheriff Dunlap, Carla Baster, and Carolyn Barbish for 42 U.S.C. § 1983

Claims (Doc. 65), Motion for Summary Judgment of defendants Snow and Brickman (Doc.

77), and defendants Lake County, Sheriff Dunlap, and Jail Administrator Leonbruno's Motion

for Summary Judgment (Doc. 87). Also pending are plaintiff's Motion to Strike Dr. Carla

Baster's Affidavit (Doc. 79) and defendants' Motion to Strike Nurse Maureen King's Expert

Report (Doc. 80). This case arises out of an injury to plaintiff's eye while he was incarcerated

1

at the Lake County Jail. For the following reasons, defendant Nurse Carolyn Barbish's

Motion for Summary Judgment is GRANTED, plaintiff's Motion for Partial Summary

Judgment on Liability against Lake County, Sheriff Dunlap, Carla Baster, and Carolyn

Barbish for 42 U.S.C. § 1983 Claims is DENIED, Motion for Summary Judgment of

defendants Snow and Brickman is GRANTED, defendants Lake County, Sheriff Dunlap, and

Jail Administrator Leonbruno's Motion for Summary Judgment is GRANTED, plaintiff's

Motion to Strike Dr. Carla Baster's Affidavit is GRANTED IN PART and DENIED IN

PART, and defendants' Motion to Strike Nurse Maureen King's Expert Report is GRANTED.

**Facts**

Plaintiff John Duka filed his original Complaint *pro se* on June 29, 2012 against

defendants Lake County Sheriff Daniel Dunlap, Lake County Jail Administrator Captain

Frank Leonbruno, Lake County Jail Nurse Cion Cabailish, and the Lake County Jail.  Upon

initial review, this Court issued a Memorandum of Opinion and Order dismissing all

defendants except for the nurse.

Plaintiff filed an Amended Complaint on March 8, 2013, naming as defendants

Dunlap, Cabailish, and Lake County Jail Employees John Does 1-100.  This Court issued an

Order on June 18, 2013, dismissing re-named defendant Sheriff Dunlap as he had previously

been dismissed and no new claims had been asserted against him.  Plaintiff was given

additional time to correctly identify the nurse whose name had been determined to be

incorrectly stated in the pleading.

Plaintiff filed another Amended Complaint on October 28, 2013.  He named as

defendants Lake County Jail Nurse Carolyn Barbish, Lake County Jail Doctor Carla Baster,

and Lake County. On February 27, 2014, an attorney entered an appearance on plaintiff's

behalf.  The following day, an Amended and Supplemental Complaint was filed.  This most

recent pleading names as defendants:  Lake County [,] Ohio, Sherriff [sic] Daniel Dunlap, Jail

Administrator Capt. Frank Leonbruno, Doctor Carla Baster[1], Nurse Diana Snow, LPN

Carolyn Barbish, Nurse Patricia Rock [2], and Nurse Nita Brickman.  Defendants Dunlap and

Leonbruno are sued in their official capacity only. The remaining defendants are sued in their

official and individual capacity.

     Evidence before this Court establishes the following facts.

     On January 28, 2011, plaintiff was re-booked into the Lake County Adult Detention

Facility (hereafter, the facility).  Doctors and nurses at this facility document an inmate's

status and/or medical treatment in the Lake County Adult Detention Facilities Physician's

Order/Progress Notes (hereafter, the Notes).  On January 31, 2011, plaintiff was seen by

Nurse Rock in the dispensary complaining of an eye injury which he had sustained while

playing basketball at recreation. Nurse Rock examined plaintiff and noted her observations in

the Notes.  She treated plaintiff with an ice pack and prescribed Motrin.  Nurse Rock

completed the January 31, 2011 Notes.  The Notes also indicate that Dr. Carla Baster

reviewed the information provided by Nurse Rock.

     On February 5, 2011, plaintiff sent an Inmate Request (hereafter, a kite) which states

that plaintiff was "now seeing constant flashes in the eye that was poked and my vision is not

as it was.  I would like to have it looked at as soon as possible by an eye doctor to make sure

---

[1]     Defendant Baster has been previously dismissed by this Court. (Doc. 71)

[2]     Nurse Rock has previously been dismissed.  (Doc. 88)

everything is O.K." The written response on the kite states that plaintiff was seen at sick call on February 7, 2011.

The Notes document the February 7 visit to the dispensary. Dr. Carla Baster avers that she personally examined plaintiff on February 7 and her affidavit states:

> He gave the history of an injury from playing basketball.  He complained that his eye was red and swollen.  Affiant examined his eye: his vision in the right eye and the left eye were both 20/40; pupils were equal and reactive; conjunctiva, which is the white of the eye, was clear; no ecchymosis was seen; the fundus, which is the back of the eye, was examined with an ophthalmoscope, and no evidence of a retinal detachment was found.  The Notes indicate the fundus was benign.  This was a superficial condition.  There were no symptoms whatsoever of a detached retina.  There were no signs or symptoms of a condition requiring further attention.  There were no indications of an emergency or a need for transport to an emergency room or other medical facilities.

Plaintiff sent a second kite on February 14, 2011 which states:

> My eye is still messed up.  I am still seeing a flash of light around bottom of eye about 20 times per day or more.  It is not a floater as I've had these before.  I spoke to my eye doctor's secretary and was told to have it professionally looked at asap.  I would like to see a professional eye doctor asap as I am a ward of the state currently, please also I would like a copy of the response to my request.

On February 16, 2011, Nurse Barbish noted the response on the kite: "Obtain a court ordered furlough to see your own eye doctor."  The Notes, dated February 16, 2011 state, "Discussed kite regarding eye problems with Dr. Baster. Inmate advised to obtain court ordered furlough to see own eye doctor."

Plaintiff never requested a court ordered furlough.  Plaintiff was discharged from the facility on February 25, 2011. Plaintiff alleges that on May 4, 2011, he experienced foggy vision and his vision began to go black.  Plaintiff was taken immediately to the emergency room and underwent surgery to repair a completely detached retina and he is now almost legally blind in his right eye.

4

Additional facts pertinent to the various motions will be discussed below.

Plaintiff alleges negligence (Count One), violations under § 1983 (Counts Two and Three), and "loss of chance to cure" (Count Four).[3]

This matter is now before the Court upon defendant Nurse Carolyn Barbish's Motion for Summary Judgment; plaintiff's Motion for Partial Summary Judgment on Liability against Lake County, Sheriff Dunlap, Carla Baster, and Carolyn Barbish for 42 U.S.C. § 1983 Claims; Motion for Summary Judgment of defendants Snow and Brickman; and defendants Lake County, Sheriff Dunlap, and Jail Administrator Leonbruno's Motion for Summary Judgment. Also pending are plaintiff's Motion to Strike Dr. Carla Baster's Affidavit and defendants' Motion to Strike Nurse Maureen King's Expert Report. The motions will be addressed in the order that they were filed.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

---

[3]    Plaintiff also alleged a § 1985 violation which has been previously dismissed.

5

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc*., 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) Defendant Nurse Carolyn Barbish's Motion for Summary Judgment**

Plaintiff alleges negligence, a Fourteenth Amendment violation under § 1983, and loss

6

of a chance to cure against Nurse Barbish.

**(a) § 1983 claim**

"To assert a cause of action arising under § 1983, a plaintiff must demonstrate a deprivation of a constitutional right caused by a state government official. The Supreme Court has held that 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.' " *Rouster v. County of Saginaw*, 749 F.3d 437 (6th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, (1976).  The Sixth Circuit has succinctly stated the applicable standard:

> The Fourteenth Amendment's Due Process Clause governs such claims presented by pretrial detainees, but are analyzed under the same rubric as Eighth Amendment claims brought by prisoners.
>
> We employ a two-prong test with objective and subjective components to assess such claims. First, we determine whether the plaintiff had a sufficiently serious medical need under the objective prong. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. Second, we determine whether the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong. There must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required. The defendant must have knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs. Where the plaintiff has received some medical treatment, federal courts are generally reluctant to second guess medical  judgments and to constitutionalize claims which sound in state tort law. However, it is possible for the treatment provided to be so woefully inadequate as to amount to no treatment at all.

*Burgess v. Fischer,* 735 F.3d 462 (6th Cir. 2013) (internal citations and quotations omitted).

Nurse Barbish argues that she had no direct, personal involvement in plaintiff's alleged constitutional violation.  It is well-settled that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun,* 680 F.3d 642 (6th Cir. 2012) (citing *Murphy v.*

7

*Grenier*, 406 Fed.Appx. 972, 974 (6th Cir.2011) ("Personal involvement is necessary to establish section 1983 liability.") and *Gibson v. Matthews,* 926 F.2d 532, 535 (6th Cir.1991) (Personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants.")

Barbish submits a supplement affidavit wherein she avers the following.  She was employed as a licensed practical nurse at the Lake County Jail during the time period at issue but she was not the nursing individual who actually saw, examined, or dealt with plaintiff directly.  Barbish affixes to her affidavit the Notes pertaining to plaintiff for the period from January 28, 2011 through September 15, 2011, which show that on January 31, 2011, plaintiff's eye injury was examined and treated by Nurse Rock, and the information was reviewed by Dr. Baster.  Nurse Barbish was not present for that examination.  On February 5, 2011, plaintiff sent his kite requesting to be seen by an eye doctor.  On February 7, 2011, Dr. Baster examined plaintiff and  recorded her findings in the Notes. Dr. Baster's written notation was then noted by Nurse Rock.

Nurse Barbish's sole involvement with plaintiff was receipt of plaintiff's February 14, 2011 kite regarding his eye injury. On February 16, 2011, Barbish discussed the kite with Dr. Baster.  Dr. Baster advised Barbish to respond to plaintiff and advise plaintiff to obtain a court-ordered furlough to see his own eye doctor.  Barbish recorded this discussion in the Notes.  Barbish then advised plaintiff on February 16, 2011, by responding to his kite via a written notation thereon, that he should seek a court ordered furlough to see his own eye doctor.

Barbish is aware that plaintiff was discharged from the facility on February 25, 2011. The next entry in the Notes is plaintiff's re-booking into the Lake County Adult Detention Facility on September 15, 2011.  Barbish never physically examined, treated, or interacted with plaintiff. Instead, Barbish's only dealing with plaintiff was to follow up on his February 14 kite. (Barbish aff. and Exs.)

On the basis of this evidence, Barbish argues that she had no personal involvement with plaintiff's alleged constitutional violation.

Plaintiff argues that Barbish was personally involved and deliberately indifferent to plaintiff's serious medical needs because plaintiff sent the kite on February 14, 2011 and Barbish, who was in possession of the kite for two days, did nothing to provide the necessary and immediate care that plaintiff required as she did not discuss the kite with Dr. Baster until February 16, 2011.

Plaintiff submits the Ohio Department of Rehabilitation and Correction Minimum Standards for Jails in Ohio which state, "Medical complaints shall be: (1) Recorded and maintained on file (2) Reviewed daily by qualified health care personnel and treatment shall be provided as necessary." Plaintiff contends that Barbish violated this procedure by ignoring the kite for two days.  Plaintiff asserts that under the Minimum Standards, Barbish had a legal obligation to evaluate and care for the needs of inmates which she violated by her deliberate indifference to plaintiff's February 14, 2011 kite. Plaintiff states,

> There is no proof that Nurse Barbish did not cause [plaintiff's] deprivation of his federally protected right.  In fact, her limited treatment and blind adherence to the decisions of Dr. Baster, with knowledge of plaintiff's injury, knowledge of the substantial risk of harm, and blatant disregard for his health show that she directly caused the violation of his rights.

(Doc. 66 at 5).  Plaintiff argues that Barbish's inaction in reviewing the kite and waiting two days to address it imposes liability on her. For the following reasons, this Court disagrees.

Under the well-established summary judgment procedure, plaintiff cannot point to "non-proof"that Barbish did not cause plaintiff's injury to show an issue of fact. Once defendant has satisfied its burden by presenting affirmative evidence that negates an element of the nonmovant's claim or by demonstrating "an absence of evidence to support the nonmoving party's case," it is plaintiff's burden to come forward with affirmative evidence in support of his claims.  As stated earlier, plaintiff  must "produce evidence that results in a conflict of material fact to be solved by a jury."

Barbish presented affirmative evidence demonstrating that she had no personal involvement with the treatment of plaintiff's eye given that she never physically examined, treated, or interacted with plaintiff.  Barbish's administrative notation in the Notes indicating that she discussed plaintiff's kite with the doctor who advised that he obtain a court ordered furlough to see his own eye doctor and the written response on the kite stating the same, does not demonstrate Barbish's personal involvement in plaintiff's medical care.

Plaintiff speculates that Barbish received plaintiff's kite on February 14 and ignored it until February 16 when she discussed it with the doctor.  Although plaintiff's kite is dated February 14, 2011, there is no evidence that Barbish received it on that date and had it in her possession.  To defeat a motion for summary judgment, plaintiff must be able to show sufficient probative evidence that would permit a finding in his favor on more than "mere speculation" or conjecture. *Sjostrand v. Ohio State University,* 750 F.3d 596 (6th Cir. 2014).

For these reasons, Barbish is entitled to summary judgment on the § 1983 claim.

10

**(b) state law claims**

Plaintiff alleges that Barbish is liable for negligence and loss of a chance to cure which requires that plaintiff show that the health care provider's negligent act or omission increased the risk of harm to the plaintiff. *Roberts v. Ohio Permanente Med. Group, Inc.*, 76 Ohio St.3d 483 (Ohio 1996).  Under either theory, for the same reasons stated above, plaintiff cannot survive summary judgment because he has not presented evidence of Barbish's direct role in plaintiff's treatment.  Rather, the evidence only shows that Barbish received plaintiff's kite and was informed by the doctor, who had treated plaintiff, to advise plaintiff to seek a court ordered furlough to see his own eye doctor.  Barbish did so.

For these reasons, Barbish is entitled to summary judgment on the state law claims.

**(2) Plaintiff's Motion for Partial Summary Judgment on Liability against Lake County, Sheriff Dunlap, Carla Baster, and Carolyn Barbish for 42 U.S.C. § 1983 Claims**

Defendant Baster has been previously dismissed by this Court. Barbish has likewise been dismissed as discussed above. Therefore, this motion relates only to defendants Lake County and Sheriff Dunlap.  As stated previously, Dunlap was sued in his official capacity only and, therefore, Lake County is actually the only remaining defendant to this motion. *Faith Baptist Church v. Waterford Tp.*, 522 Fed.Appx. 322 (6th Cir. 2013) (citations omitted) ("Official-capacity suits represent only another way of pleading an action against an entity of which an officer is an agent.")

It is well-established that a municipality may only be held liable under § 1983 when an official policy or custom causes an employee to violate another's constitutional rights.  *See Smith v. Patterson*, 430 Fed.Appx. 438 (6th Cir. 2011) (citing *Monell v. Dept. of Soc. Servs.*,

11

436 U.S. 658 (1978)). There is no respondeat superior liability under § 1983. *Id.*

"On a single-act theory of municipal liability under § 1983, a plaintiff must demonstrate that a deliberate choice to follow a course of action is made from among various alternatives by the official responsible for establishing final policy with respect to the subject matter in question; moreover, that course of action must be shown to be the moving force behind or cause of the plaintiff's harm." *Burgess v. Fischer,* 735 F.3d 462 (6th Cir. 2013).

It is plaintiff's burden to point to record evidence supporting the existence of a municipal policy. For the following reasons, plaintiff fails to do so.

In addition to the evidence discussed above, plaintiff avers that on February 14, he called a friend who works for an optometrist and that he was told that medical attention was immediately necessary to preserve his vision. (pltf. aff.) Plaintiff submits the affidavit of Christopher Quinn who states that plaintiff called him from the jail on February 14 and told him that he had been poked in the eye and described his symptoms. Quinn relayed the information to his wife, a licensed optician, who told plaintiff to seek medical attention and see an eye doctor immediately. (Christopher Quinn aff.) Plaintiff avers that after he sent his February 14 kite, he was not examined and he received no response until February 16. (pltf. aff.) Plaintiff states that he never received a furlough for medical care.

Although plaintiff seems to argue that the individual defendants were deliberately indifferent to his serious medical needs, the only issue before this Court is whether an official policy, or a single decision of a policy maker, caused his injury.

Plaintiff contends that defendants' admission that there was a procedure for plaintiff to obtain a court ordered furlough amounts to a policy which inflicted the injury. Plaintiff

additionally argues that there was an informal policy and custom given that defendants did not follow their own written policies.  Plaintiff points to the Ohio Department of Rehabilitation and Correction's Minimum Standards for Jails in Ohio.  (Doc. 65 Ex. 8) Therein, it states the "jail shall provide, or make provisions for, twenty-four hour emergency health care" and "[m]edical complaints shall be... reviewed daily by qualified health care personnel and treatment shall be provided as necessary."  Further, "Prisoners shall be treated by a personal physician in the jail at their own expense, upon approval by the jail physician, provided that current credentials of the personal physician are verified." (*Id.*)  The Lake County Sheriff's Office Inmate Rules of Conduct state, "Necessary medical and dental treatment is available to you as an inmate in an Ohio jail.  This service shall be given by the jail medical staff.... You may be treated by your own physician at your own expense here at the detention facility..."  (Doc. 65 Ex. 10) Plaintiff also points to Ohio Revised Code § 341.04 which states, "The sheriff shall visit the county jail and examine the condition of each prisoner, at least once during each month."  Finally, plaintiff notes a 2011 Annual Report of the Lake County Adult Detention Facility which acknowledges the need of the jail medical staff to reduce the cost of medical services.[4]

Plaintiff also argues that defendants are liable under the single act theory given that Dr. Baster is a final municipal decision maker who has the authority under Ohio law to implement, review and change healthcare policies at the jail.  Her decision to deny plaintiff

---

[4]     In his reply brief, plaintiff raises, for the first time, an argument that Sheriff Dunlap failed to train his staff. The Court agrees with defendants that this is improper.  Nonetheless, the Court addresses plaintiff's arguments when they are raised in opposing defendants' motion as discussed below.

13

necessary medical care on February 14 renders defendants liable under the single act theory.

Plaintiff does not establish the absence of a genuine issue of material fact as to the existence of a policy that caused a constitutional violation.  Plaintiff relies on the evidence discussed above to demonstrate a policy, i.e., the jail's procedure for obtaining a court ordered furlough, Ohio Department of Rehabilitation and Correction's Minimum Standards which address medical care, Lake County's rules regarding medical care, and the Ohio statute's provision related to the sheriff's duties.  Essentially, plaintiff argues that the defendants failed to follow their own policy for obtaining a court ordered furlough. Moreover, there existed an informal policy because defendants failed to provide emergency medical care, failed to review daily the medical complaints, and failed to provide an opportunity for plaintiff to be treated by his own physician in addition to being treated by the jail physician despite the fact that written procedures provided for all of the above. But, this evidence fails to show, as plaintiff had alleged in his Amended and Supplemental Complaint, that defendants had an unwritten policy of withholding medically necessary treatment.

"A municipal policy includes a policy statement, ordinance, regulation, or decision officially adopted and promulgated... A... plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue... A custom for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Frontera v. City of Columbus Div. of Police*, 395 Fed.Appx. 191 (6th Cir. 2010) (internal citations and quotations omitted).

The fact that defendants had a written procedure for obtaining a court ordered furlough, and plaintiff did not utilize it, does not amount to an unconstitutional policy.  Nor

14

does plaintiff demonstrate an absence of genuine issue of material fact that there was an informal policy of withholding necessary medical treatment based on the fact that plaintiff did not receive emergency medical care and was not examined by an outside physician. Additionally, there is no evidence of the failure to daily review medical complaints. Even if there were such evidence, one such failure to do so does not amount to a policy. For these reasons, plaintiff is not entitled to summary judgment against Lake County as to liability.

In the responsive brief, defendants submit the affidavit of Dr. Baster. She avers that neither the Lake County Sheriff nor Lake County had a policy or procedure which allowed or encouraged indifference to the medical needs of inmates, and no policy or custom caused plaintiff's injury. Plaintiff filed a motion to strike Dr. Baster's affidavit. Plaintiff asserts that Dr. Baster is not qualified to opine regarding plaintiff's condition because she is not an ophthalmologist or regarding jail policies and procedures because she is not qualified as an expert on jail policies.

Dr. Baster is qualified as a fact witness based on her personal knowledge given that she examined, diagnosed, and ordered treatment for plaintiff. The Sixth Circuit has acknowledged that a treating physician may opine as to diagnosis, prognosis, as well as causation when his opinions are a necessary part of the patient's treatment and are within his ordinary medical training. *Fielden v. CSX Transportation, Inc.,* 482 F.3d 866 (6th Cir. 2007). The fact that Dr. Baster is not an ophthalmologist does not disqualify her from opining on medical diagnosis and causation.

However, while Dr. Baster may make averments about the facility's policies and procedures based on her personal knowledge, she may not offer her opinion because she has

15

not been qualified as an expert on those matters. For these reasons, plaintiff's Motion to Strike is granted in part and denied in part.

Even without Dr. Baster's opinions regarding Lake County policies, plaintiff's motion still fails because, as discussed above, he does not demonstrate an absence of a material issue of fact that an unconstitutional policy caused his injury. Moreover, plaintiff offers no qualifying expert opinion on the issues.

As an exhibit to the motion to strike Dr. Baster's affidavit, plaintiff submits the Expert Report of Nurse Maureen King who states that the care rendered to plaintiff at the facility "was below and deviated from the standard of care for nursing treatment, medical care, medical treatment and advice existing in that year."  Defendants responded with a Motion to Strike this report.  The Court agrees with defendants that because Nurse King is not a medical doctor and has no experience in correctional facility management, she is not qualified as an expert and cannot offer opinions about medical diagnosis, medical causation, or correctional facility administration. In particular, because she is not a doctor, Nurse King is not qualified to opine on Dr. Baster's medical diagnosis or to offer her own diagnosis. Moreover, while Ms. King is a nurse, she does not show that she has worked in a jail or correctional facility medical dispensary and so is not qualified to opine on the standard of care of nurses in that medical community.  Nor is Nurse King qualified to opine as to how Sheriff Dunlap performs his job.  For these reasons, defendants' Motion to Strike is granted.[5]

As plaintiff has not demonstrated an absence of genuine issue of material fact as to a

_____

[5]     Plaintiff also attached Nurse King's report to defendants' Motion for Summary Judgment, discussed below.  The report has not been considered in deciding that motion.

custom or policy that caused a constitutional injury, he is not entitled to summary judgment on the liability of Lake County and Sheriff Dunlap in his official capacity.

### (3) Motion for Summary Judgment of defendants Snow and Brickman

Defendants Snow and Brickman move for summary judgment on the basis that they were added as parties after the statute of limitations had run and neither defendant personally cared for or treated plaintiff. The motion is supported by the affidavits of Nurses Snow and Brickman.  Plaintiff did not oppose the motion. Accordingly, the motion is unopposed and granted for the reasons stated therein.

### (4) Motion for Summary Judgment of Defendants Lake County, Sheriff Dunlap, and Jail Administrator Leonbruno

Again, defendants Dunlap and Leonbruno are sued in their official capacity only. Therefore, Lake County is actually the only remaining defendant to this motion.  *Faith Baptist Church v. Waterford Tp.*, 522 Fed.Appx. 322 (6th Cir. 2013) (citations omitted) ("Official-capacity suits represent only another way of pleading an action against an entity of which an officer is an agent.")

Defendants argue there was no underlying constitutional violation and no custom or policy that was the moving force behind that violation.  For the following reasons, this Court agrees.

As stated above, "A municipality only can be directly liable under § 1983 when a policy or custom of the municipality causes a constitutional violation by one of its employees. For municipal liability, there must be an underlying unconstitutional act due to a policy or custom of the municipality..." *Grabow v. County of Macomb*, --- Fed.Appx. ----, 2014 WL 4251573 (6th Cir. August 29, 2014) (citations omitted).  "The custom or policy must be the

17

'moving force' behind the constitutional violation, so the plaintiff needs to 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Amerson v. Waterford Township*, 562 Fed.Appx. 484 (6ᵗʰ Cir. 2014) (citations omitted)

As discussed above, "Prison officials violate an inmate's Eighth and Fourteenth Amendment right to adequate medical treatment when: (1) the deprivation alleged is, objectively, sufficiently serious such that the inmate is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official subjectively demonstrates deliberate indifference to inmate health or safety." *Grabow v. County of Macomb*, --- Fed.Appx. ----, 2014 WL 4251573 (6ᵗʰ Cir. August 29, 2014) (internal quotation marks and citations omitted).

"A 'sufficiently serious' medical need requires the plaintiff to show that the inmate is incarcerated under conditions imposing a substantial risk of serious harm." *Id.* "Deliberate indifference is a state of mind more blameworthy than negligence... [It is] ... the equivalent of recklessly disregarding that risk." *Id.* (citations omitted). "To prove deliberate indifference, the plaintiff must allege facts that show the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id.* (internal quotation marks and citations omitted).

The Court agrees with defendants that plaintiff lacks evidence to support his claim of any underlying medical care violation as there is no evidence to support the objective or subjective elements of his claim.

Plaintiff now asserts that he is not challenging the care provided by Dr. Baster.

18

Rather, it was Nurse Barbish's inaction upon the receipt of the February 14 kite that amounts to the denial of necessary medical care. However, as discussed above, the evidence shows only that Nurse Barbish discussed the February 14 kite with Dr. Baster who advised Barbish to inform plaintiff to obtain a court ordered furlough to see his own eye doctor.  As Barbish was merely following the instructions of the facility's doctor, plaintiff has not shown evidence of her deliberate indifference.  Moreover, plaintiff again argues that defendants have failed to prove that a constitutional violation did *not* occur, that they were *not* deliberately indifferent to plaintiff's serious medical need, and that his eye injury was *not* sufficiently serious.  As explained above, it is plaintiff's burden to show as much and not defendants' burden to demonstrate that they did not cause the injury.  Absent an underlying constitutional violation, any claim against Lake County must fail. *Grabow v. County of Macomb*, --- Fed.Appx. ----, 2014 WL 4251573 (6th Cir. August 29, 2014).

Defendants present the expert report of Dr. Richard Silverstein, an ophthalmologist, who states that Dr. Baster's examination of plaintiff was well within the standards of care for her area of specialization.  He further states, "It is not possible to say with any reasonable medical certainty that an action or inaction of the jail staff or the dispensary staff proximately led to any worsening of [plaintiff's ] eye condition or created any new injury or worsening condition..."  Additionally, "It cannot be stated with a reasonable degree of medical certainty that had [plaintiff] undergone a comprehensive vitreoretinal examination prior to his discharge from the jail on February 25, 2011 that there would have existed the presence of a retinal detachment or even a retinal tear which could have been diagnosed at that time."  No medical doctor has submitted a report "proximately relating the [May 2011] retinol surgery...

19

to the incident at the jail in January 2011 or the attention by the medical and nursing staff at the Lake County Jail in January and February 2011." In sum, "It is my opinion, based upon a reasonable medical certainty that the detached retina that led to the surgery for [plaintiff] occurred closer in time to his emergency room visit in early May 2011 than to his release from the jail on February 25, 2011." Dr. Silverstein also notes that the records show that following the May 2011 surgery, plaintiff's visual acuity has been completely and totally restored.

Plaintiff presents no medical expert testimony countering Dr. Silverstein's opinions.

Even if he did establish an underlying constitutional violation, however, there is no evidence that a municipal policy or custom caused it. Plaintiff no longer relies on the alleged policies to which he referred in his motion for summary judgment on liability, but now argues that his *Monell* claim is based on the delegation of duty by Sheriff Dunlap which amounts to a "customary practice." In particular, plaintiff asserts that O.R.C. § 341.01 requires that Sheriff Dunlap "have charge of the county jail and all persons confined therein," and that no statute permits him to delegate these responsibilities although he has admitted that he does. Additionally, plaintiff contends that the sheriff has failed to ensure that his staff is properly trained on the proper Lake County Jail procedure regarding medical care as evidenced by the fact that an outside physician has never been brought in to treat an inmate. Moreover, all medical decisions, policies, and procedures were delegated and the policy regarding furloughs is unclear. Plaintiff asserts that in the absence of such delegation, Nurse Barbish would have been able to discuss concerns regarding plaintiff's medical treatment and care with the sheriff and could have prevented the constitutional violation from occurring. In sum, plaintiff argues

20

that Sheriff Dunlap's delegation and "gross lack of oversight" amounts to deliberate indifference and the moving force behind the constitutional violation.

Defendants point out, however, that Ohio statutory law does permit the sheriff to delegate his responsibilities by appointing deputy sheriffs, O.R.C. § 311.04, and jail staff, O.R.C. § 341.05.  Regardless, plaintiff has failed to demonstrate through evidence that Sheriff Dunlap's delegation amounted to a municipal policy or custom.  Plaintiff points to the sheriff's testimony that he does not supervise his medical staff. As he is not a medical professional, however, the sheriff must rely on his medical staff to render medical opinions, diagnosis, and treatment. Plaintiff has not presented evidence that the sheriff's reliance was inappropriate.  To the extent this is a "failure to supervise" claim, there is no evidence that Lake County "acted with deliberate indifference to the risk of the constitutional violation." *Amerson v. Waterford Township,* 562 Fed.Appx. 484 (6th Cir. 2014).  Moreover, contrary to plaintiff's assertions that Sheriff Dunlap merely delegates his responsibility to inspect the facility, the sheriff testified that he does personally inspect the inmates' conditions when he is at the facility several times per week.  Nor does plaintiff support his assertion that Sheriff Dunlap failed to train the dispensary staff.

For these reasons, defendants are entitled to summary judgment on the § 1983 claim.

To the extent they are remaining, defendants are entitled to summary judgment on the state law claims for the same reason that plaintiff lacks evidence to counter defendants' evidence regarding plaintiff's medical care.  Additionally, if necessary, defendants are entitled to immunity pursuant to O.R.C. § 2744.03.

**Conclusion**

For the foregoing reasons, defendant Nurse Carolyn Barbish's Motion for Summary Judgment is granted, plaintiff's Motion for Partial Summary Judgment on Liability against Lake County, Sheriff Dunlap, Carla Baster, and Carolyn Barbish for 42 U.S.C. § 1983 Claims is denied, Motion for Summary Judgment of defendants Snow and Brickman is granted, defendants Lake County, Sheriff Dunlap, and Jail Administrator Leonbruno's Motion for Summary Judgment is granted, plaintiff's Motion to Strike Dr. Carla Baster's Affidavit is granted in part and denied in part, and defendants' Motion to Strike Nurse Maureen King's Expert Report is granted.

IT IS SO ORDERED.


  /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/22/14

22